44410. LUNDY v. THE STATE.

SUBMITTED APRIL 9, 1969—DECIDED APRIL 24, 1969.

Adams, O'Neal, Steele, Thornton, Hemingway & McKenney, H. T. O'Neal, Jr., Manley F. Brown, for appellant.

Jack J. Gautier, District Attorney, for appellee.

EBERHARDT, Judge. ■ Code § 59-114 generally proscribes the practice of succeeding terms of service of grand jurors. However, Section 4 of Ga. L. 1943, pp. 680, 681 provides that a judge of the Superior Court of Bibb County may call back the grand jury which was last drawn and impaneled. Recognizing that the question of the constitutionality of Section 4 of the 1943 Act had not been clearly drawn in issue in the trial court, the grounds of the plea in abatement based upon Code § 59-114 are expressly abandoned in the brief. See Long v. State, 160 Ga. 292 (127 SE 842), holding that a similar Act for Walton Superior Court was a general Act and modified § 59-114.

Having abandoned the grounds of the plea in abatement urged below, it is argued in the brief instead that the oral order of the court recalling the February grand jury for service dur-

ing the April term was insufficient to authorize their service, and that the written nunc pro tunc order filed later did not cure the defective indictment which had been returned. Thus defendant seeks to raise for the first time on appeal new grounds of the plea in abatement which were not alleged or urged below.

Pleas in abatement are dilatory pleas and must be strictly construed, certain in intent and leave nothing to be suggested by intendment. *Jones v. State,* 219 Ga. 848, 849 (136 SE2d 358). It is a general principle that a party cannot assert one ground in support of a plea, motion, or objection in the trial court and then expect the appellate court to review an entirely new ground to which he has switched on appeal. The appellant must necessarily be limited on appeal to the grounds which he properly presented in the trial court. See, e.g., *Crider v. State,* 114 Ga. App. 522, 523 (151 SE2d 791), where it is held: "A ground of objection to evidence raised for the first time on review presents nothing for decision. *Middleton v. Waters,* 205 Ga. 847, 854 (55 SE2d 359), and citations. The third enumeration of error complains of the admission of evidence for a reason completely different from the objection made on the trial of the case, and the argument in the defendant's brief as to the admissibility of such evidence, which is limited to the grounds sought to be raised for the first time on review, presents nothing for decision." Similarly, in *Royal Frozen Foods Co. v. Garrett,* 119 Ga. App. 424 (3), it is held that an objection to the charge of the court must bring into focus the precise nature of the alleged error so that it can be reasonably understood by the trial court. See also *G. E. C. Corp. v. Levy,* 119 Ga. App. 59 (1) (166 SE2d 376); *Chastain v. State,* 113 Ga. App. 601 (2) (149 SE2d 195); *Collier v. State,* 223 Ga. 867 (1) (159 SE2d 73).

Enumerations of error 1 and 2 are without merit.

■ Enumerations of error 3 and 4 complain of the court's charge to the effect that the defendant could not create an emergency or apparent emergency and then rely thereon to kill in self-defense. The court instructed the jury: "Now the court instructs you that one cannot by his conduct or actions create an emergency, or an apparent emergency, which would make a reasonable man honestly believe that he was about to

be assaulted, and that it was necessary to defend himself, and thus take advantage of the situation thus created by himself and make an assault upon the person thus defending himself.

"I charge you that if you believe the defendant in this case by his own conduct created an emergency, or apparent emergency such as would make the deceased as a reasonable man believe he was being [unlawfully] assaulted, and that under such conditions the deceased undertook to defend himself and that then the defendant unlawfully shot and killed the deceased, I charge you that if you find that to be true, he would not be justifiable in what he did."

It is first contended that the charge deprived defendant of his right of self-defense, which was also given in charge, in that the word "unlawfully" was omitted where indicated by brackets supra. However, there is no question but that the assault upon the deceased was "unlawful" under the testimony here. The deceased was walking along a road when a group of boys including defendant forced their way off a bus headed for school and began beating him with belts. At some point during the affray the deceased picked up a piece of masonry and approached defendant, whereupon defendant shot him. It is well established that if the defendant provokes the difficulty and creates a necessity for the deceased to defend himself, then the defendant can derive no benefit from the principle of self-defense. *Domingo v. State*, 213 Ga. 24 (3) (96 SE2d 896) and cases cited.

The main contention is that the evidence indicates without contradiction that any initial assault by the defendant upon the deceased had terminated prior to the killing and that the deceased had reinstituted the battle on his own initiative. Thus it is urged the charge was not adjusted to the facts.

However, we can not agree that the evidence showed such a state of facts without contradition. There were several eyewitnesses to the occurrence, most of them defense witnesses, and the accounts they gave varied. The prosecution's eyewitness testified that the deceased was backing up from the gang in the roadway and finally retreated across the roadway where he picked up the masonry and advanced toward the gang whereupon all but two, one of whom was the defendant, fled. When

the deceased was approximately 13 to 15 feet from defendant on the opposite side of the road, defendant backed up a couple of steps as if he were going to run and then stopped and shot deceased. Jerry Jackson, a defense witness, testified that he was part of the gang which came off the bus after seeing the deceased walking along and that they chased him across the street whereupon he picked up the masonry and started back. Danny Hallman, another defense witness, testified that he and the other boys went across the road to where deceased was standing and that "Butch" sneaked up in back of deceased and threw him down while they were swinging belts, whereupon deceased got up, grabbed the masonry and ran behind some of the boys. Under these and the other accounts of the occurrence we cannot say as a matter of law that the initial assault had ended and that deceased had reinstituted the battle on his own initiative rather than acting in self-defense. This was a question for the jury, and it was properly submitted to them.

Enumerations of error 3 and 4 are without merit.

*Judgment affirmed. Bell, P. J., and Deen, J., concur.*